[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 166 
I am unable to discover any plausible reason for contending that the section of the Revised Statutes upon which this *Page 167 
action is founded was repealed or suspended by the act of 1845. Section 9 of the latter act repeals all laws conflicting with its provisions. The only section of this act with which it can be claimed that the section of the Revised Statutes in question in any way conflicts is the 5th, which declares that whenever any town shall determine, pursuant to the provisions of that act, that no license shall be granted in such town, whoever shall sell by retail, c., within the town, "shall be liable to all the penalties imposed by title 9 of part 1, ch. 20 of the Revised Statutes," c. Does this clause repeal the statute referred to in it? On the contrary it perpetuates it. It is the very reverse of a repeal. It is an express declaration that the obligation and force of the former statute should be in no way impaired by the new enactment, even in towns which should vote against licenses.
The reason given why the law of 1845 should operate as a repeal or suspension of the former law, in towns deciding against licensing, is, that otherwise persons violating the law would be subject to two penalties for the same offence. But it is clear that no such consequence would follow from holding that the provisions of the Revised Statutes in question continued in force. Section 5 of the act of 1845 imposes no new penalty. It merely declares that notwithstanding a town should, pursuant to its provisions, vote against licenses, the statute imposing penalties for selling spiritous liquors by retail should still continue in force in such town. The object of this section seems to have been to repel, by a legislative declaration, the conclusion that a penalty for selling "without having alicense" could not be collected in a town in which no license could be obtained. Instead of being intended to repeal the section of the Revised Statutes giving the penalty, its obvious design was to take away a possible defence to actions brought to recover that penalty; and such no doubt is its effect.
The next objection to the recovery is that the action is not properly brought in the name of the overseers of the poor. *Page 168 
As the act of 1845 does not expressly authorize the overseers of the poor to sue for any penalties accruing under it, it is claimed that the action can only be brought by the attorney-general. This objection, like the one just considered, rests upon the assumption that § 5 of the act of 1845 itself gives the penalty, an idea which has already been shown to be unfounded. Overseers of the poor are expressly authorized to sue for penalties incurred under the provisions of the Revised Statutes upon which this action is brought (R.S., § 19, title
9, ch. 20, part 1), and their right is also recognized by § 7 of the act of 1845, which provides that, "In case the overseers of the poor shall neglect for ten days to prosecute for any penalty provided by title 9, part 1, ch. 20 of the Revised Statutes, any other person may prosecute," c. The answer to the previous objection, therefore, is a conclusive answer to this.
The only remaining objection is that the term of office of Rodman Thomas, one of the plaintiffs upon the record at the time of the trial, had expired and another had been elected in his place. It is expressly provided by a section of the Revised Statutes that "No suit commenced by or against any officers named in this article (overseers of the poor being of the number) shall be abated or discontinued by the death of such officers, their removal from or resignation of their offices, or the expiration of their term of office, but the court in which any such action shall be pending shall substitute the names of the successors in such office, upon the application of such successors or of the adverse party." (2 R.S., 474, § 100.) It has been held by the supreme court, in regard to trustees of a school district, who are also within this section, that unless the successors in office, or the adverse party, apply for a substitution, the suit should proceed in the names of the original parties. (Colegrove
v. Breed, 2 Denio, 125.) It is true that case was in a justice's court, where a substitution could not have been compelled; but I do not see that this affects the principle. A substitution might have been had in that court on the *Page 169 
application of the successors in office of the trustees who were parties. The case seems to have been put upon the ground that, in all cases falling within the provisions of the section in question, it is optional with the parties authorized to apply for a substitution whether they will make such application or not; and that if they do not apply, the case may continue to be prosecuted by or against the original parties. I suppose this to be the true construction of the statute.
But aside from this, it is a perfect answer to this objection that the election of the new overseer in place of Thomas occurred after the commencement of the circuit. It is a well settled doctrine of the common law that the whole period of a term or circuit is looked upon as but a single day, and everything which is done at a circuit or term is regarded as done upon the first day. This doctrine has been recognized by several cases in our own courts. (Bennett v. Davis, 3 Cow., 68; Griswold v.Stewart, 4 Cow., 457; Nichols v. Chapman, 9 Wend.,
452.)
The courts in England carried the principle so far as to hold that the statute of 17 Charles II., ch. 8, which enacted that the death of either party after verdict should not be alleged for error, applied to a case where the defendant had died on the first day of the sitting, and before the trial, in fact, of the cause. (1 Salk., 8; Jacobs v. Miniconi, 7 Term R., 31; 3Bos. Pull., 549.)
Our statute, however, has guarded against such a construction, in the case of a defendant who dies before verdict, by an express provision. (2 R.S., 387, § 5.) But I see no objection to applying the rule to a case like this, where one of two plaintiffs, suing in an official character, either dies or is superseded in office after the commencement of a term at which the cause is tried. The rule would be remedial in its operation, and could not by possibility work any evil. It is precisely one of those cases to which the rule, that every judicial act done at a sitting or term is to be regarded as *Page 170 
done upon the first day of the term, was intended to apply. Upon this ground, then, as well as that before noticed, I should feel bound to overrule the objection under consideration.
This view disposes of the demurrer as well as of the questions raised upon the bill of exceptions. The judgment of the supreme court must therefore be affirmed.
Judgment affirmed.